Estate of John S. Ernsting, Deceased, Lou B. Ernsting, Executrix and Lou B. Ernsting, Surviving Wife v. Commissioner.
Estate of Ernsting v. Commissioner
Docket No. 64012.
United States Tax Court
T.C. Memo 1959-77; 1959 Tax Ct. Memo LEXIS 171; 18 T.C.M. (CCH) 377; T.C.M. (RIA) 59077; April 23, 1959
*171 1. T, the owner of substantially all the stock of a corporation which was in the process of liquidation, received from it a distribution in partial liquidation in 1951 when he withdrew $50,000 in cash, deposited it in five savings accounts in the names of himself and his wife, and transferred unsold assets valued at $7,881.77 to his personal safe deposit box. 2. T's basis for gain or loss on the corporate stock owned by him at the time of the distribution determined. 3. Interest earned during 1951 on the deposits in the five savings accounts was income of T even though these deposits and interest earned thereon were reflected on the books of the corporation as belonging to it. Albert W. Strang, Esq., for the petitioners. Leo K. O'Brien, Esq., and Richard W. Janes, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax in the amount of $9,017.54 for the year ended December 31, 1951. The issues are: 1. Did John S. Ernsting receive a distribution in partial liquidation of The Ernsting Company in 1951 consisting of cash in the amount of $50,000 and inventory items valued at $7,881.77? *172 2. If so, what was the cost or other basis of the stock of The Ernsting Company held by John S. Ernsting at the date of the partial liquidation of that corporation? 3. Did the petitioners in 1951 receive additional income in the form of interest on five savings accounts maintained either in the name of John S. Ernsting or in the joint names of John S. Ernsting and his wife? Findings of Fact Part of the facts have been stipulated and the stipulation is incorporated herein by reference. During the year 1951, John S. Ernsting and Lou B. Ernsting were husband and wife and residents of San Diego, California. They filed a joint income tax return for the year 1951 with the then collector of internal revenue at Los Angeles, California. John S. Ernsting, who died on March 21, 1955, will hereinafter be referred to as Ernsting. The Ernsting Company was incorporated in 1907 in the State of California and operated a retail jewelry store in the City of San Diego. C. W. Ernsting, father of John S. Ernsting, was founder, sole stockholder and head of the corporation until December 29, 1928. On that date Ernsting acquired 648 shares of stock of The Ernsting Company from his father for $50,000, *173 $5,000 of which was paid in cash and the balance of $45,000 by a promissory note dated January 2, 1929, secured by the 648 shares. The note provided for interest at the rate of six per cent per annum payable monthly and for principal payments of $2,500 per annum beginning on January 2, 1932. During each of its fiscal years ending June 30, 1918 through June 30, 1928, The Ernsting Company realized a profit from the operation of its jewelry store. During its fiscal years ending June 30, 1929 though June 30, 1933, it sustained the following net losses from its operations: Year
Net Loss
1929
($ 4,286.48)
1930
(10,144.23)
1931
(5,814.87)
1932
(7,599.28)
1933
(48,562.87)
Early in March 1933, The Ernsting Company made a voluntary assignment of all its assets for the benefit of creditors. The assignee held an auction sale from March 20, 1933 to April 26, 1933. The assets, other than cash, remaining in the hands of the assignee at the conclusion of the sale consisted of fixtures, accounts receivable, good will, and a small amount of inventory. C. W. Ernsting purchased these remaining assets from the assignee for $4,500 cash. The $4,500 which the assignee received *174 from C. W. Ernsting, plus the other cash which came into the assignee's hands as a result of the auction sale, was used to satisfy the corporation's creditors, and the corporation was left without any assets. The minutes of the annual meeting of the stockholders of The Ernsting Company held on July 10, 1933, read in part as follows: "The President reported that, as a result of the assignment made to Albert Behrstock of Los Angeles under date of February 25th, the assets of the Corporation had been liquidated for the benefit of Creditors. Obligations were cleared at approximately seventy five cents on the dollar and the Corporation released from further liability. This having been accomplished the stock was returned to the original owners, by the assignee. It was further reported that, at the present time, efforts of Officers and Personnel were being directed towards the building up of assets by means of a re-organization sale. The stockholders agreed that this was a proper procedure and urged the Directors to continue this effort." On April 14, 1934, C. W. Ernsting executed the following instrument: "IN CONSIDERATION of love and affection for my son, JOHN S. ERNSTING, I, C. *175 W. ERNESTING, hereby transfer and convey to him all my right, title and interest in stock, fixtures, accounts receivable and good will acquired by me from THE ERNSTING COMPANY on April 28, 1933. "I also hereby cancel two promissory notes due from JOHN S. ERNSTING, bearing dates and in amounts as follows: "First note dated January 2, 1929, in the sum of $45,000.00; Second note dated March 24, 1931, in the sum of $2,000.00 Dated April 14th, 1934." The merchandise, accounts receivable, fixtures and good will which Ernsting received from his father were transferred by Ernsting to The Ernsting Company. The corporation did not pay Ernsting for these assets. With the assets thus acquired, and merchandise supplied by wholesalers and suppliers to be paid for as sold, the corporation engaged in the operation of a retail jewelry store in the City of San Diego. It continued to operate this store until sometime in December, 1950. In September of 1950 King's Sales Service, a professional liquidating firm, was employed to conduct a liquidation sale of the assets of the Ernsting Company. At the time of the sale, Ernsting was president and majority stockholder of the corporation. The *176 minutes of a meeting of the board of directors of The Ernsting Company held in San Diego, California, on December 29, 1950, read, in part, as follows: "* * * In view of the liquidation of the business, the salaries of the officers were discussed. "RESOLVED, * * * that the Secretary may be employed * * * after January 31, 1951, for the necessary work to be performed in connection with the winding up of the affairs of the corporation * * *." L. P. Hill was Secretary of The Ernsting Company on December 29, 1950. He had been secretary of the corporation for many years. He had also been employed by the corporation as a jewelry salesman and bookkeeper. For these services he had been receiving a monthly salary of $433.33. During January of 1951 he obtained full-time employment with another jewelry store in San Diego. The liquidation sale was completed by December 31, 1950. During the sale, the Company sold its store furniture and fixtures, reduced its inventory from $79,000 to approximately $7,881.77, and increased its bank account balance to an amount in excess of $60,000. Its only other assets at the conclusion of the sale on December 31, 1950, were accounts receivable, which were *177 slowly being liquidated. The jewelry store was closed on December 31, 1950, and the lease covering the store premises was cancelled in April 1951. The merchandise valued at $7,881.77, on hand at the conclusion of the sale, was transferred to the personal safe deposit box of Ernsting. On December 30, 1950, a check made payable to "Cash" in the amount of $50,000 was drawn on The Ernsting Company's bank account. This check was deposited on January 8, 1951, after endorsement by Ernsting, in the San Diego Trust & Savings Bank, San Diego, California, in a checking account which Ernsting maintained in the names of himself and wife. On January 9, 1951, five checks, in the amount of $10,000 each, were drawn on the personal checking account described above and deposited with the following banks or financial institutions: Bank of America National Trust and
Savings Association, San Diego,
Acct. No. 10663 carried in name of
John S. Ernsting
$10,000.00
Security Trust & Savings Bank of
San Diego, Acct. No. 35565, carried
in name of John S. Ernsting
$10,000.00
United States National Bank, San
Diego, Acct. No. 31184, carried
in name of Ernsting, John S. or
Lou B.
$10,000.00
San Diego Federal Savings & Loan
Ass'n, San Diego, Acct. No. 20363,
carried in name of John S.
Ernsting
$10,000.00
First Federal Savings & Loan Ass'n,
San Diego, Acct. No. S. 13959,
carried in name of John S.
Ernsting or Lou B. Ernsting,
as joint tenants
$10,000.00
*178 The transaction involving the establishment of the foregoing savings accounts was reflected on the books of account of The Ernsting Company in the following manner: Special Cash Deposit
Dr.
Cr.
Balance
Beginning balance
$50,000.00
$50,000.00
6/30/52 Interest
1,519.58
51,519.58
10/1/52 Interest U.S. National
210.00
51,729.58
10/1/52 a/c J.S.E.
$10,210.00
41,519.58
10/1/52 Deposit with State Board of Equalization
100.00
41,619.58
6/30/53 Interest on Deposits
1,032.82
42,652.40
6/30/54 Interest on Deposits
1,059.87
43,712.27
6/30/55 Interest on Deposits
1,029.09
44,741.36
Miscellaneous Income
6/30/52 Interest on special bank deposits: Bank of America
$ 303.01
Security Trust & Savings
303.01
First Federal Savings
456.78
San Diego Federal Savings
456.78
10/1/52 Interest on U.S. National
210.00
6/30/53 Interest on special deposits
1,032.82
6/30/54 Interest on special deposits
1,059.87
6/30/55 Interest on special deposits
1,029.09
The balance sheets attached to the Federal income tax return filed by The Ernsting Company for the fiscal year ended June 30, 1951, discloses the *179 following account balances as of the beginning and end of said fiscal year: June
June
30, 1950
30, 1951
Cash
$ 5,996.36
$59,445.57
Accounts Receivable
3,734.57
3,944.91
Inventory - stock in trade
74,929.84
7,881.77
Furniture and fixtures
5,000.00
0
Total Assets
$89,660.77
$71,272.25
Accounts Payable
$ 2,414.94
0
Accrued taxes
50.77
$ 25.00
Officers' accounts
2,142.66
0
Capital Stock: Common -
750 shares at $100.00
75,000.00
75,000.00
Earned Surplus (deficit)
10,052.40
(3,752.75)
Total Liabilities
$89,660.77
$71,272.25
The "Analysis of Earned Surplus" schedule attached to the Federal income tax return filed by The Ernsting Company for the fiscal year ended June 30, 1951, discloses the following: Balance beginning of year
$10,052.40
Add: 1950-51 California Franchise
Tax
25.00
$10,077.40
Less: Net loss for year
$8,805.15
Depreciation not
claimed in prior
years
5,000.00
1951-52 California
Franchise Tax
25.00
13,830.15
Balance end of year (deficit)
[3,752.75)
In the latter part of 1951 Ernsting decided to re-enter the retail jewelry business on a limited scale. The business was *180 established in January, 1952 at Room 502, Bank of America Building, San Diego, California. The business was conducted as a sole proprietorship under the name "John S. Ernsting". The lease of the business premises was executed January 3, 1952, by Ernsting in his individual capacity. On January 7, 1952, Ernsting withdrew $10,210 from the savings account maintained with the United States National Bank, San Diego, California. This amount was comprised of the aforementioned $10,000 deposit of January 9, 1951, and the interest earned on such deposit of $210. In turn, this $10,210 was deposited January 7, 1952, in the personal commercial account of John S. Ernsting or Lou B. Ernsting, with Bank of America, 6th and Broadway, San Diego, California. This withdrawal was recorded on the books of The Ernsting Company as follows: Dr.
Cr.
Account with John S.
Ernsting
$10,210.00
Special Cash Deposit
$10,210.00
On October 1, 1952, The Ernsting Company, with the consent of Ernsting, elected to take over the jewelry business theretofore conducted by Ernsting and the following entry was recorded on the corporation's books of account: Dr.
Cr.
Prepaid rent
$ 70.00
Special cash deposit
100.00
Fixtures
1,238.00
Merchandise inventory
3,606.90
Account with John S.
Ernsting
$5,014.90
*181 The corporation continued the operation of the jewelry business at the Bank of America address until Ernsting's death on March 21, 1955. On January 8, 1951, Ernsting owned the 648 shares of capital stock of The Ernsting Company which he had acquired from his father, C. W. Ernsting, on or about December 28, 1928. Ernsting purchased five shares of stock from L. P. Hill on January 31, 1951, by check in the amount of $500 drawn on The Ernsting Company bank account and charged to "John S. Ernsting" account on the corporation records. Lou B. Ernsting, wife of Ernsting, owned one share of stock. Ernsting acquired 96 shares of stock at various times prior to January 8, 1951. The cost basis for the 96 shares of stock and the one share held by Lou B. Ernsting cannot be substantiated. From October 21, 1919, to and including January 8, 1951, 750 shares of the capital stock of The Ernsting Company were issued and outstanding. The "Inventory and Appraisement" filed with the Superior Court of California in and for the County of San Diego in the matter of the probate of the Estate of John S. Ernsting, deceased, reports that as of the date of his death on March 21, 1955, Ernsting was the owner *182 of 750 shares of the capital stock of The Ernsting Company of a total value of $62,968.95. On November 18, 1955, the Executrix of the Estate of John S. Ernsting, deceased, obtained an order from the Superior Court of California in and for the County of San Diego authorizing the Executrix to liquidate The Ernsting Company. The Ernsting Company was formally dissolved May 10, 1956. The respondent determined that Ernsting received in 1951 a distribution in partial liquidation of The Ernsting Company in the amount of $57,881.77, consisting of cash of $50,000 and inventory of $7,881.77; that this $57,881.77 represented a long-term capital gain; and that 50 per cent of this amount, or $28,940.89, was includible in petitioners' taxable income for 1951. Interest earned during 1951 on the $50,000 deposited on January 9, 1951, in the five savings accounts amounted to $600. The respondent determined that this interest should have been included in the taxable income reported by petitioners in their 1951 return. Opinion RAUM, Judge: Respondent determined that in 1951 Ernsting received a distribution in partial liquidation of The Ernsting Company consisting of cash in the amount of $50,000 *183 and inventory valued at $7,881.77. The burden of proving error in this determination is on the petitioners. Petitioners contend that no distribution was made by the corporation of the $50,000 and unsold inventory because after withdrawal those assets continued to belong to the corporation and Ernsting was merely holding them as the agent of, and for the use and benefit of, the corporation. As evidence of this petitioners point out that after the withdrawal of the $50,000 and inventory they were reflected as assets of the corporation on its books and Federal income tax return for the fiscal year ended June 30, 1951, and that interest accruing on the five savings accounts was treated as income of the corporation on its books and income tax returns. Petitioners urge that neither Ernsting nor his wife received any benefit from the funds deposited in the five savings accounts in their names. L. P. Hill, the Secretary of The Ernsting Company at all times material herein, was the only witness who testified on behalf of petitioners. He stated that the purpose of the $50,000 withdrawal was to put to use inactive funds of the corporation by depositing them where they would be earning interest *184 for the benefit of the corporation. When asked why they were deposited in accounts in the names of Ernsting and his wife, he replied that "he [Ernsting] wanted to secure some return on them". And he explained that the deposits were placed in Ernsting's name "because of a regulation I believe which prevents a corporation from having savings accounts". The witness did not identify the regulation referred to, but petitioners' counsel, on brief, makes reference to " 1936 Federal Reserve Bulletin 191". While it is true that there is a regulation, 12 CFR 217.1, that is susceptible of construction that banks under the Federal Reserve System will not receive savings deposits from corporations operated for profit, we are not persuaded that this regulation played any part in making the deposits in question. In the first place, the very names of two of the financial institutions indicate that they were probably not member banks of the Federal Reserve System. Moreover, two of the accounts were in the joint names of Ernsting and his wife, and strongly suggest personal rather than corporate accounts. We think that reliance upon the foregoing regulation is merely *185 an afterthought, and was not the real motivating consideration that led to these deposits. The testimony of this witness does not convince us that Ernsting withdrew $50,000 from the corporate bank account and deposited it in five savings accounts in the names of himself and his wife merely because he wanted The Ernsting Company to realize interest on these funds. At the time these funds were withdrawn, and the unsold inventory valued at $7,881.77 was placed in Ernsting's safe deposit box, The Ernsting Company had ceased business, sold most of its assets, closed its store, and was engaged in winding up its affairs. It had approximately $60,000 in cash derived from the sale of its assets and a small amount of unsold inventory. All that remained to be done to wind up its affairs was to collect a small amount of accounts receivable and distribute its assets. The determination of when and how this distribution should be made rested with Ernsting who was its president and the owner of virtually all of its stock. All he had to do was to withdraw the assets from his corporate pocket and transfer them to his personal pocket. In such circumstances any action taken by him indicating an election *186 to take property of the corporation as his own may be sufficient to show that a distribution to him of corporate assets was made. Ernsting's withdrawal of $50,000 in cash, the deposit of these funds in five savings accounts in the names of himself and his wife, and the placing of unsold inventory valued at $7,881.77 in his personal safe deposit box, clearly indicate an election on his part to take these assets as his own. Inasmuch as he was in substantial control of the corporation, there was no one who could dispute his acquisition ff these assets and they were his regardless of any entries made on the corporate books and returns to reflect continued ownership by the corporation. Such entries cannot convert cash and other assets distributed to a stockholder in partial liquidation of a corporation into assets owned by it. There is no evidence that Ernsting was obligated to return the cash and inventory withdrawn by him to his corporation. He acquired absolute dominion and control of these assets and could use them, and in at least one instance did use some of them, for his own purposes without securing the consent of his corporation. These, in addition to the interest on the savings *187 deposits, were benefits which accrued to him, and not to the corporation, as the result of the withdrawals. The entries reflecting continued ownership by the corporation of the assets withdrawn, and the reporting on its returns of the interest income accumulated on the savings accounts in the names of Ernsting and his wife, impress us as being merely an attempt to postpone or avoid the tax consequences of receiving a distribution in partial liquidation of The Ernsting Company. Petitioners have not sustained their burden of proving that the respondent erred in his determination that such a distribution was received. Petitioners contend further that, if a distribution in liquidation was made, it was made during the calendar year ending December 31, 1950, and is not properly includible in the return for 1951. This contention is made for the first time in petitioners' reply brief, and apparently represents an afterthought because the main brief contains the statement that "In 1951 John S. Ernsting, president of The Ernsting Company, withdrew from a commercial checking account $50,000 of idle corporate funds and deposited these funds in interest bearing savings accounts. * * * In addition *188 Mr. Ernsting deposited the remaining inventory of the corporation, valued at $7,881.77 in his safe deposit box." Since the point was not raised in the pleadings, [1] it is not properly before us and must be rejected for that reason alone. Furthermore, even if it were properly in issue, the burden would be upon petitioners to establish that the withdrawals took place in 1950 rather than in 1951. But the record, at best, is inconclusive as to this. It certainly fails to show any date as to the withdrawal of the physical inventory. And as to the $50,000 check the stipulation shows merely that it was "drawn" on December 30, 1950, and endorsed and deposited by Ernsting on January 8, 1951; there is no evidence that the check was delivered prior to January 1951. In view of the burden of proof we could not in any event find that the withdrawals actually occurred in 1950 rather than in 1951, even if the issue were before us. *189 The next issue relates to the basis of the stock of The Ernsting Company owned by Ernsting at the time he received the distribution in liquidation in 1951. Petitioners contend that his basis was $50,500. This amount includes the $5,000 in cash and the note for $45,000 which Ernsting gave his father on December 29, 1928, for 648 shares of stock, and the check for $500 which Ernsting drew on the corporation's bank account on January 31, 1951, and gave to L. P. Hill for five shares of stock. Respondent's principal contention is that Ernsting's basis was zero inasmuch as the 648 shares acquired by him from his father in 1928 became worthless in 1933 when all assets of the corporation, including its good will, were sold to satisfy the claims of its creditors. In the alternative, respondent contends that Ernsting's basis is limited to $5,000, the amount of cash paid by him to his father for the 648 shares of stock. In support of the contention in favor of a basis of $50,500, petitioners urge that the original investment of $50,000 in 648 shares of stock of the corporation did not become worthless in 1933; that the stock had potential value in that year because, even though it did not *190 have a liquidating value, the stockholders and officers had reasonable hope and expectation that in the future it might acquire a value through foreseeable operations; and that where such a potential value exists, the stock cannot be said to be worthless, citing Cooley Butler, 45 B.T.A. 593, and Sterling Morton, 38 B.T.A. 1270, affirmed, 112 Fed. (2d) 320 (C.A. 7). The cited cases do hold that where a stock has potential value it cannot be said to be worthless. They do not, however, lend any support to petitioners' contention that the stock of The Ernsting Company had any potential value in 1933 after all of its assets were sold to satisfy its creditors and it was left without any assets. Such a sale is ordinarily an identifiable event which evidences destruction of a stock investment. Burnet v. Imperial Elevator Co., 66 Fed. (2d) 643, 645 (C.A. 8); A. R. Jones Oil & Operating Co. v. Commissioner, 114 Fed. (2d) 642, 645 (C.A. 10). As evidence that the stockholders of the corporation were optimistic in 1933 that its assets "would exceed its liabilities in the reasonably near future", petitioners point to portions *191 of the minutes of their annual meeting held on July 10, 1933, set forth in our findings. We find nothing in those minutes reflecting such optimism and any demonstration of optimism on their part would indeed be surprising inasmuch as their corporation, after sustaining repeated losses from its operations over a period of five years, had disposed of all of its assets (including good will) for the benefit of creditors and was a mere empty shell. The stock was therefore utterly worthless. It is true that the minutes contain the statement that "efforts of Officers and Personnel were being directed towards the building up of assets by means of a re-organization sale". How this could be done when the corporation had no assets is not disclosed, and there is no convincing evidence that any steps were taken to reactivate the corporation or transfer any assets to it during the year 1933. The record does not disclose whether Ernsting claimed any loss in his return for that year because of the worthlessness of his stock. Regardless of whether he did or did not do so, the events which occurred in 1933 clearly evidence the destruction of the value of his stock investment in that year and his basis *192 was zero when in 1934 he decided to reactivate the corporation. In 1934 Ernsting "reactivated" the corporation and contributed to it assets having a value of $4,500 which his father had purchased from the assignee in 1933 and transferred to him by gift in April 1934. The evidence convinces us that it represented a capital contribution by Ernsting which should be treated as an investment by him in the stock of the corporation. We hold, therefore, that in 1934 he became entitled to a basis for gain or loss of $4,500 on the stock of The Ernsting Company held by him. The contention that the $500 paid on January 31, 1951, for the five shares of corporate stock owned by L. P. Hill should be added to basis is without merit. The Hill stock was purchased by check in the amount of $500 drawn by Ernsting on the corporation's bank account. It was, therefore, purchased with corporate funds and should properly be treated as a purchase by the corporation of five shares of its stock even though Ernsting caused the $500 to be charged to his account on the corporate books. Neither Ernsting nor the corporation owned the Hill stock at the time the distribution in liquidation was made on January 8, 1951. Even *193 if it be assumed that the purchase on January 31 could be attributed to Ernsting, the cost of that stock would have no bearing on the amount of capital gain realized by him from a distribution in liquidation made prior to its purchase. Our conclusion is that Ernsting realized a long-term capital gain in the amount of $53,381.77 ($57,881.77 minus $4,500) as the result of the distribution in liquidation received by him from The Ernsting Company in 1951, and one-half of this amount, or $26,690.88, should have been reported in the income tax return filed by petitioners for that year. The remaining issue relates to the interest of $600 earned during 1951 on the $50,000 deposited in the five savings accounts in the names of Ernsting and his wife. Respondent determined that this interest should have been included in the taxable income of the spouses in their 1951 return. Inasmuch as we have held that Ernsting rather than the corporation owned the deposits upon which the interest accrued, respondent did not err in his determination with respect to the interest. Decision will be entered under Rule 50. Footnotes
1. Although the pleadings allege generally that respondent erred in determining that "petitioners received a liquidating distribution in the year 1951", it is plain from the pleadings as a whole and from petitioners' conduct of the case up to the filing of the reply brief that they were in disagreement with the respondent only as to whether there was any distribution at all, that reference to 1951 was merely descriptive and was not intended to put in issue a contention that the distribution was made in 1950 rather than in 1951. Moreover, no such issue was suggested at the trial of the case.↩